## THE MONMOUTHSHIRE.[1]

### ALBERTSEN v. THE MONMOUTHSHIRE.

#### (District Court, S. D. New York. December 30, 1890.)

COLLISION—LIGHTS NOT VISIBLE TO ATTENTIVE LOOKOUT.
  When several persons on watch, attentive to their duties, can see no lights on an approaching vessel during a considerable period when they ought to be seen, the defect will be ascribed to the other vessel, even when the precise reason why the lights are not seen does not appear; and specially so where circumstances appear that might have caused obscuration of the lights.

In Admiralty.
*George A. Black*, for libelant.
*Wing, Shoudy & Putnam*, for claimant.

BROWN, J. The evidence leaves no doubt that the bark Norway and the steamer, being near Singapore, were approaching each other about head and head. Their lights ought to have been visible to each other for about 10 minutes before the collision. The steamer's lights were seen; the bark's lights were not seen. The night was clear. The horizon behind the bark was dark. This would have aided in the easy recognition of the bark's lights if they were properly burning, and not obscured. Five witnesses from the steamer ought specially to have seen any such lights ahead that were visible, and four other witnesses would naturally have observed them before collision. All say they could not see any light. The hull and sails were seen by the different witnesses when from 500 to 1,400 feet away, and the steamer then sheered to port, and nearly avoided the bark; but she rubbed along the bows in passing, and carried away some of her gear. Against all this evidence on the steamer's part is opposed the testimony of only the captain of the bark, who says that his lights were properly burning, affixed to cranes aft of the mainmast, hanging about three feet outside of and above the rail; and that, when he saw the steamer's lights a good distance off, he got up on the rail, leaned over, and saw that his green light was properly burning. This evidence from a single witness is not sufficient to outweigh so many witnesses from the steamer, who testify that no such light was visible to them. It is not credible that so many persons on watch

[1] Reported by Edward G. Benedict, Esq., of the New York bar.

should for 10 minutes not see a light ahead, if it were such a light as the regulations require, and not obscured. In many similar cases it has been held that when several persons on watch, apparently attentive to their duties, can see no light during such a considerable period, when it ought to be seen, the defect will be ascribed to the other vessel, even when the precise reason why the light is not seen does not appear. *The Narragansett*, 20 Blatchf. 87;[1] *The Royal Arch*, 22 Fed. Rep. 457; *The Alaska*, Id. 548, 551; *The Sam Weller*, 5 Ben. 293; *The Westfield*, 38 Fed. Rep. 366; *The Drew*, 35 Fed. Rep. 789. Still more, when there are circumstances such as exist in this case, viz., the lights being set far aft, and low down, and the vessel listing to starboard, that might cause the lights to be obscured. *The Johanne Auguste*, 21 Fed. Rep. 134, 140; *The Tirzah*, 4 Prob. Div. 33; *The Caro*, 23 Fed. Rep. 734. As the bark was coming head on, and was projected against a black horizon, I cannot find that there was negligence in not seeing her earlier. *The Gustav*, Holt, Rule Road, 34. Their combined speed was probably at least 12 knots, so that their approach was over 1,200 feet per minute. The steamer did all that was possible to avoid the bark from the time she was visible, so that she is free from blame. Porting her helm at last was the proper maneuver to swing her stern to port. Had the bark herself starboarded after the steamer's red light was shut out, and when the steamer was known to be sheering to port, no doubt the collision would have been avoided. Libel dismissed, with costs.