PHILADELPHIA & R. RY. CO. v. RIVER & HARBOR IMP. CO. et al.

(Circuit Court of Appeals, Third Circuit. November 28, 1910.)

No. 24, Oct., 1910.

1. COLLISION (§ 123*)—SUIT FOR DAMAGE TO ANCHORED SCOW AT NIGHT.

In a suit to recover damages by collision to a scow which was struck and sunk while moored at night in a place where other vessels were likely to pass, libelant has the burden to show that a light was burning on the scow at the time of collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 260; Dec. Dig. § 123.*]

2. COLLISION (§ 79*)—SUIT FOR DAMAGES—SUFFICIENCY OF EVIDENCE.

Testimony that a light was set on a scow anchored in the Delaware river at night, that it was burning five hours before the scow was struck by a tug, and also four hours afterward, *held* not sufficient to establish the fact that it was burning at the time of collision against the positive testimony of the master of the tug, who was at the wheel, the lookout, who was apparently attentive to his duties, and two other hands, that there was no light on the scow at the time of the collision, nor when they passed her again two hours later, and therefore insufficient to establish the fault of the tug for the collision.

[Ed. Note.—For other cases, see Collision, Cent. Dig. § 123; Dec. Dig. § 79.*]

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

Suit in admiralty by the River & Harbor Improvement Company as owner of dump scow No. 21 against the Philadelphia & Reading Railway Company, owner of the tug Penllyn. Decree for libelant (180 Fed. 954), and respondent appeals. Reversed.

James F. Campbell, for appellant.

Henry R. Edmunds, for appellee.

Before BUFFINGTON and LANNING, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. The proofs of this case show that through the night of December 26, 1908, dump scow No. 21 of the River & Harbor Improvement Company was anchored in the Delaware river to a buoy in front of its yard. At half past 4 the next morning the barge was struck and sunk by the Penllyn, a tug of the Philadelphia & Reading Railway Company. On libel filed by the owner of the scow against the tug the latter was decreed in fault, and from such decree the tug owner appealed to this court.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The case turns on whether the scow had a light burning at the time she was struck. Being anchored at a point where vessels were likely to pass, the burden was on the scow to show a light was burning at the time of the collision. The Armonia (D. C.) 67 Fed. 362. The scow contends that her light was burning at the time of the collision from her proving by one witness it was lighted in the evening, by another that it was burning at 8, by another at half after 11 that night, and by a third who testified he took down the burning light from the sunken scow at half after 8 the next morning. As to the five intervening hours before the accident and the four following it the scow makes no proof. On the other hand, the Penllyn produced five witnesses, who testify as to the intervening time, and four of them testify to two different times they saw the scow without a light. Derrickson, the master of the Penllyn, who was at the wheel, testifies the scow had no light when she was struck. In this he was corroborated by Matos, the lookout, and by Kernich and Gorman, two other hands aboard who saw the scow immediately after the collision. The tug passed the scow again on her return trip about two hours later, and Butler, the tug's engineer, says no light was then burning on her. In this he is corroborated by Matos, Kernich, and Gorman, all of whom say no light was burning on her at that time. The fact that the Penllyn has shown her master was at the wheel, the lookout on watch, and that her engines were promptly stopped on signal, indicated such vigilance aboard her that the evidence on her behalf that no light was observed on the scow should be accorded very grave weight and should not be disregarded except on strong, countervailing proof. Those aboard the Penllyn were seemingly in the line of their duty; their own safety, that of the crew, and the property they had in charge all united to lead them to due care, and it is impossible to believe the captain and lookout would run down a lighted, anchored vessel (see The John H. Starin, 122 Fed. 238, 58 C. C. A. 600), and at a point outside the dredging company's yard where they knew scows were likely to be anchored. Taking all these facts into account, that the proof of the scow that her light was burning at the time of the collision was inferential, while that of the tug that it was not was positive, and the number of witnesses the tug produced on that point, we are of opinion the weight of the proof is with the tug, and that the decree of the court must be reversed with directions to dismiss the libel.