## THE LEXINGTON.

(District Court, S. D. New York. December 31, 1917.)

COLLISION ⬯75—MEETING STEAM AND SAILING VESSEL—FAILURE TO SHOW LIGHTS.

A collision in Long Island Sound on a clear night between a passenger steamer, with a lookout posted and officers on duty and a meeting schooner, *held* due solely to the fact that the schooner was not showing her port light.

In Admiralty. Suit for collision by Judson L. Hamilton, master of the schooner Stetson, against the steamer Lexington. Decree for respondent.

Affirmed 256 Fed. 65, —— C. C. A. ——.

Alexander & Ash, of New York City (Peter Alexander, of New York City, of counsel), for libelant.

Burlingham, Montgomery & Beecher, of New York City (Chauncey I. Clark, of New York City, of counsel), for claimant.

AUGUSTUS N. HAND, District Judge. The steamer Lexington collided with the three-masted schooner Stetson in Long Island Sound. The Lexington seeks to excuse the collision upon the ground that the Stetson had no port light and maintained a negligent lookout. The accident occurred at night in clear weather. The libelant says the lights of the Stetson were set and brightly burning at the time of the collision, but that the impact of the Lexington extinguished the port light and shook down the starboard light.

A general consideration which has impressed me is the inherent unlikelihood of such a collision if the port light had been burning. The

Lexington was a passenger steamer. She had a bow lookout. Her master and quartermaster were also on duty at the time of the collision. That she should have run straight into a properly lighted schooner on a clear night without seeing her until she was 2½ lengths away is in itself, though possible, highly improbable. The John H. Starin, 122 Fed. 236, 58 C. C. A. 600. The libelant admits that there was no light immediately after the collision and is forced to claim that it was put out by the collision. Whether the collision would have had such an effect may be doubted. Moreover, the fact is highly significant that five of the depositions of the libelant were taken before those of the claimant, and not one of these five witnesses said that the port light was extinguished by the collision, nor had the libel anywhere mentioned such an occurrence. They were followed by nine witnesses on behalf of the Lexington who swore that her port light was out. The deposition of Hamilton, the master of the Stetson, was taken, and he first testified that the light was shaken out by the collision. His report to the local inspectors had not mentioned that the light was thus extinguished. Moreover, he said he told his counsel all the facts, but admitted on cross-examination that he did not think he told him that the port light went out.

Neither the light, nor the man who lighted it, was produced at the trial. In view of the sharp conflict of testimony as to whether this lamp was ever lighted, and the admission that it was found to be out immediately after the collision, I cannot believe the explanation of the single witness, Hamilton, that this condition was caused by the collision.

The Stetson did not have a lookout just before the time of the collision. Chevrie, the lookout, testified that he went aft to look at the clock after another steamer had passed the Stetson, and when he got back the Lexington "was pretty near on top of us." Therefore he was absent at the most crucial time. The captain, however, was aware of the presence of the steamer which had been reported by Chevrie before; he was holding his course as he ought, and the steamer was under the rules bound to keep out of his way. The absence of the lookout therefore apparently did not contribute to the injury, and I place my decision purely upon the ground that the Stetson had insufficient lights.

The libel is dismissed, with costs.