## THE GANSFJORD.

District Court, E. D. Louisiana. April 17, 1928.

No. 18882.

**1. Constitutional law ☞56—Congress may distribute judicial power under its powers to regulate commerce and to establish inferior courts.**

Congress may distribute judicial power, as its wisdom, in the light of experience, dictates, under its broad powers to regulate commerce and to ordain and establish courts inferior to the Supreme Court.

**2. Constitutional law ☞56—Statute providing for libel against vessel damaging jetty held not unconstitutional encroachment of admiralty and maritime jurisdiction (Rivers and Harbors Act 1899, §§ 14, 16 [33 USCA §§ 408, 411, 412]; Const. art. 3, § 2).**

Rivers and Harbors Act 1899, §§ 14, 16 (33 USCA §§ 408, 411, 412; Comp. St. §§ 9919, 9921), making it unlawful to injure or impair usefulness of sea wall or jetty and other such property built by United States for preservation or improvement of its navigable waters, making violation of its provisions a misdemeanor, and providing that any vessel used in violating such provisions shall be liable for penalties specified, and in addition for amount of damages done by it, and may be proceeded against summarily by libel in any District Court having jurisdiction, *held*, not invalid as an encroachment of the admiralty and maritime jurisdiction, in violation of Const. art. 3, § 2.

**3. Navigable waters ☞22(6)—Libel against vessel for damaging jetty held maintainable by United States, regardless of negligence (Rivers and Harbors Act 1899, §§ 14, 16 [33 USCA §§ 408, 411, 412]).**

Libel of information under Rivers and Harbors Act 1899, §§ 14, 16 (33 USCA §§ 408, 411, 412; Comp. St. §§ 9919, 9921), against vessel for damages caused by collision with jetty, *held* maintainable by United States, even though evidence did not sustain superfluous allegation of negligence contained in libel.

At Law. Libel of information by the United States against the steamship Gansfjord. Decree for the United States.

Edmond E. Talbot, Asst. U. S. Atty., of New Orleans, La.

M. A. Grace (of J. D., M. A. & E. H. Grace), of New Orleans, La., for respondents.

BURNS, District Judge. The libel of information was filed on behalf of the United States against the Norwegian steamship Gansfjord, under charter to the United Fruit Company, a domestic corporation, charging that the vessel negligently collided with the East Jetty wall of South Pass at a point about 400 feet above the East Jetty Light, damaging same to the extent of $2,556.37, in violation of sections 14 and 16 of the Rivers and Harbors Act approved March 3, 1899 (30 Stat. 1152 [33 USCA §§ 408, 411, 412; Comp. St. §§ 9919, 9921]).

Exceptions to the jurisdiction of this court, either as a court of admiralty or of law, and attacking the constitutionality of the act in so far as it concerns the remedy afforded the government thereby for recovery of damages to jetties and other such property, as being an encroachment of the admiralty and maritime jurisdiction, in violation of article 3 of section 2 of the Constitution, were overruled. The Gansfjord (D. C.) 17 F.(2d) 613. Claimant insistently reiterates them in its answer on the merits.

[1, 2] In overruling these exceptions I contemplated the libel of information as a proceeding sui generis in character, deriving its sanction directly from the terms of the act in question. I cannot see what the constitutional declaration, that the judicial power of the United States shall extend to all cases of

admiralty and maritime jurisdiction, has to do with the distribution of that jurisdiction by Congress as it alone may decide. It seems clear to me that in passing the act Congress contemplated the state of the jurisprudence by which the courts of the United States have consistently held that damages to shore property were not cognizable in admiralty, and that the United States was thereby deprived of the benefit of admiralty liens for such damages, particularly in cases where the vessels damaging public property were transiently in this country, and whose owners and officers were not amenable to the process of the courts; that also in an action at law no attachment ordinarily would lie in a federal court, in the case of an alien or absentee owner, in the absence of personal service.

For these reasons, among others, no doubt, in its effort to conserve and protect public works such as these jetty walls, and after declaring unlawful by section 14 any act of any person who, in any manner whatever, defaced, destroyed, or injured same, penalized such acts of defacing, destroying, and injuring, etc., in section 16, which, inter alia, makes any boat used or employed in such violations liable for all or any of the pecuniary penalties against such person specified; then it specifies particularly that such boat shall be liable "in addition thereto for the amount of the damages done by said boat," etc., and specifies that "said boat," etc., "may be proceeded against summarily by way of libel in any District Court of the United States having jurisdiction thereof."

Certainly Congress may distribute the judicial power as its wisdom, in the light of experience, dictates, under its broad powers to regulate commerce, etc., and to ordain and establish courts inferior to the Supreme Court. If this be so, there can be no question of its right to prescribe mere procedural forms for the enforcement of remedial legislation in the public interest. I deem the seeming confusion of admiralty process for the enforcement of a declared lien with the legal form of attachment well within its authority. It is interesting to note, in passing, that the Legislatures of the states, including Louisiana, have by statute extended similar remedies by attachment in law cases arising ex delicto, and for uncertain, unliquidated amounts whereby the absent owner, defendant, may be mulcted in damages up to the value of the attached property found within the jurisdiction of the trial court.

The case came on for trial on the merits, trial by jury having been tendered, but waived by stipulation. From the evidence I find

that the master of the ship and the bar pilot were guilty of gross negligence and want of skill in the navigation and operation of the vessel, so that during a dense fog the ship's helm was put hard astarboard in the narrow pass within 400 feet of East Jetty Light, so that the vessel, drawing some 14 feet and going at full speed, or about 10 knots, turned at almost right angles to the pass and plunged ashore, imbedding herself in the jetty wall. Specifically, I find:

That the fog bell and light at the end of the East Jetty, within a ship's length of the point of collision, were in good condition and in operation according to regulation.

That the pilot was unskillful and negligent in running the vessel into such a fog, because he confessed himself uncertain of his exact location.

That the pilot was negligent in starboarding his helm while in a narrow channel, when uncertain of his location.

That the master of the vessel was negligent in standing by and not protesting the negligence and want of skill in the pilot, to prevent the imminent danger he must have recognized, and I believe from his evidence, he did recognize.

That the master was negligent and behaved in an unseamanlike manner, because, knowing the pilot to be young and inexperienced, whilst he had sailed South Pass at least 80 times in four years, he negligently assumed the hazard as a joint venture with the pilot.

The claimant, although it admits that criminal prosecution of the master and pilot is not a necessary condition precedent to suit under the statutes, insists that there is no evidence of their negligence, seeking to capitalize the fact that the testimony of the lighthouse tender was offered only in rebuttal of the master and pilot, who said the East Jetty fog signal was not operating, whereas the lighthouse keeper produced his log records, kept according to regulations, showing that it was. However, this contention, like others by which its defense of unavoidable accident is sought to be sustained, is beside the point, since the statute, as I understand what seems its plain meaning, does not make the vessel's liability for damages for defacing, destroying, or injuring such property depend upon proof of willful or malicious intent, or negligence or want of skill, nor does it permit of a defense that the collision with the shore resulted from a mere mariner's error of judgment. The phrase used in section 14 denounces as unlawful the act of any person who shall "take possession

of or make use of *for any purpose,* or build upon, alter, *deface, destroy, move, injure,* obstruct by fastening vessels thereto *or otherwise,* or *in any manner whatever* impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, * * * " etc. It is difficult to conceive how the legislative intent to compel restitution of the value of such public property, however it might be damaged, could be stated in plainer terms.

[3] My conclusion, therefore, is that, even though there was not a fair preponderance of evidence to sustain the seemingly superfluous allegation of negligence in the libel, and even though I am in error in my finding of negligence and want of skill, the cause of action and the remedy sought is precisely within the terms of the statute.

A decree for libelant may be entered accordingly.