## THE DIXIE.

### UNITED STATES v. DIXIE.

No. 232.

District Court, S. D. Texas, Houston Division.

June 19, 1941.

Douglas W. McGregor, U. S. Atty., and Brian S. Odem, Asst. U. S. Atty., both of Houston, Tex., for United States.

Royston & Rayzor and John R. Brown, all of Houston, Tex., for claimant.

KENNERLY, District Judge.

This is a libel or proceeding in rem by the United States of America against the Tug Boat "Dixie" to recover damages under Sections 408 to 412, Title 33, U.S.C.A. The Government claims that the "Dixie", on February 26, 1937, collided with and damaged a bridge built by the Secretary of Agriculture, with funds appropriated by the Congress, across Bayou Teche at or near Jeanerette, Louisiana. Upon the filing of the libel, the "Dixie" was seized under process issued by the Clerk of the Court, was claimed by her owner, the Butcher-Arthur Corporation (for brevity called Claimant), and released upon stipulation in the sum of $6,000 filed by Claimant. Claimant has intervened and answered, combating the Government's libel.

The parties agree that at the threshold of the case, there is presented the question of whether under the facts here, this proceeding in rem may be maintained under Sections 408 to 412. They have stipulated the facts, and Claimant has filed its motion for summary judgment of dismissal. This is a hearing of such motion.

The facts stipulated are as follows:

"The plaintiff, United States of America, and Butcher-Arthur Corporation, claimant, by and through their undersigned attorneys of record, hereby stipulate and agree, for use by the Court in determining whether or not the complaint states a cause of action for which the relief requested can be granted, or for summary judgment based upon claimant's contention that the instant proceeding cannot be maintained under the so-called Rivers and Harbors Act, 33 U.S. C.A. §§ 408–412:

"(a) The bridge, and the appurtenances thereto, which are claimed to have been damaged by the Tug Dixie and tow, and for which the instant complaint in rem has been brought (hereinafter referred to as bridge) was built during the year 1929 and completed on June 30th, 1929.

"(b) The bridge was constructed under the provisions of an item contained in 'an Act making appropriations for the Department of Agriculture for the fiscal year ending June 30th, 1929, and for other purposes', approved May 16, 1928, 45 Statutes 539, 567, which provides:

" 'To enable the Secretary of Agriculture, in cooperation with the authorities of the States concerned, or with individuals, to make such investigations and demonstrations as may be necessary in connection with the development of livestock production in the cane-sugar and cotton districts of the United States, $54,000, of which amount $13,000 shall be available only for the construction of a bridge across Bayou Teche at the New Iberia Livestock Experiment Station, Louisiana.'

(c) An item in the second Deficiency Act, fiscal year 1929, approved March 4, 1929, 45 Statutes 1623, 1635, provides:

" 'Not to exceed $13,000 of the $54,000 contained in the Agricultural Appropriation Act for the fiscal year 1929, for experiments and demonstrations in livestock production in the cane sugar and cotton districts of the United States, available for the construction of a bridge across Bayou Teche at the New Iberia Livestock Experiment Station, Louisiana, shall remain available for the same purpose until June 30, 1930, and in addition thereto not to exceed $3,000 of the appropriation under the same title contained in the Act making appropriations for the Department of Agriculture for the fiscal year 1930 is hereby made available for the construction of such bridge.'

"(d) The bridge was built by and for the account of the Department of Agriculture. The Department of Agriculture on October 18, 1928, submitted its application to the Secretary of War for approval of plans for a horizontal swing truss highway bridge to be constructed at the Demonstration Farm. The permit thus sought from the

War Department was the usual permit required by all persons, whether Governmental or private, for the construction of any bridge, pier, wharf, or other structure in, on or over any navigable stream or waterway.

"(e) The application of the Department of Agriculture for the construction of this bridge was approved by the War Department, Chief of Engineers, on February 20th and 23rd, 1929. The permit of the War Department having been granted the Department of Agriculture built, or had built for it, the bridge which was completed on June 30, 1929.

"(f) At all times since its construction and acceptance by the Department of Agriculture, the bridge has been used, maintained by and at the expense of the Department of Agriculture.

"(g) The bridge is used by the New Iberia Livestock Experiment Station, its employees and members of the public as a means of going to and from parts of the Experiment Station and as a bridge to enable persons or vehicles, etc., to go from one side of the Bayou Teche to the other side. The bridge replaced a pontoon bridge at the same location which was constructed under plans which had been submitted by the Parish of Iberia, the City of New Iberia, and the Corporation of Jeanerette, approved by the War Department, October 28, 1914. The bridge in question was built for and to be used as, a bridge to function and serve generally as a bridge and to serve and function generally as had the pontoon bridge at the same location which had been constructed and maintained theretofore by the Parish of Iberia, the City of New Iberia, and the Corporation of Jeanerette under the War Department permit of October 28, 1914.

"(h) Except for the granting of the permit to construct the bridge, the War Department, the Secretary of War, the United States Engineers have had nothing to do with the construction, maintenance, use, or repair of the bridge."

1. The Government in 1939 brought a proceeding in Admiralty in this Court against the "Dixie" on this same cause of action, which proceeding was dismissed because under the facts presented, and under The Panoil, 266 U.S. 433, 45 S.Ct. 164, 69 L.Ed. 366, and Aktieselskabet Dampskib Gansfjord v. United States, 5 Cir., 32 F.2d 236, the matter was not cognizable in Admiralty. The Dixie, D.C., 30 F.Supp. 215.[1] The Government did not appeal but brought this proceeding.

In the Gansfjord case, supra, it was a jetty that was injured, and it is perfectly plain that such jetty was under the control of the United States and used as defined in Sections 408 and 412[2] for the preserva-

---

[1] This is a suit in Admiralty by the United States of America against the Tugboat "Dixie", alleging that the "Dixie", while moving down stream in the waters of Bayou Teche at or near Jeanerette, Louisiana, with two loaded oil barges in tow, collided with and damaged the Government's bridge across Bayou Teche. The suit is for damages to the bridge and is apparently brought in Admiralty because of the language of the latter part of Section 412, Title 33, United States Code Annotated, reading as follows: "and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof."

Claimants of the "Dixie" have moved to dismiss on the ground that it is not a case cognizable in Admiralty. I think Claimants are right, and that it is not a case cognizable in Admiralty. The Panoil, 266 U.S. 433, 45 S.Ct. 164, 69 L.Ed. 366. Aktieselskabet Dampskib Gansfjord v. United States, 5 Cir., 32 F.2d 236. The District Courts of the United States have jurisdiction of many cases of libel which are not cases cognizable in Admiralty. I think this is one of that class of cases.

[2] "§ 408. Taking possession of, use of, or injury to harbor or river improvements. It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works: Provided, That the Secretary of War may, on the recommendation of the Chief of Engineers, grant permission for the temporary occupation or use of any of the aforementioned public works when in his judg-

tion and improvement of the navigable waters of the United States. But that the bridge here was not so used, nor did it have any connection, direct or remote, with navigation or the preservation or improvement of navigable waters. Nor was it used for any of the other purposes stated in such Sections. It was built and is apparently maintained by the United States Department of Agriculture in connection with one of its Experimental Stations near New Iberia, Louisiana.

I think that a proceeding in rem under Sections 408 and 412 may only be maintained where the property injured or destroyed is used for the preservation or improvement of the navigable waters of the United States or for the other purposes stated in such Sections. This view seems the more consistent when it is considered that Sections 408 and 412 are taken from the Act of March 3, 1899, 30 Stat. 1152, respecting the improvement of rivers and harbors. Also when it is considered that any damages recovered by the Government under such Sections must be "placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred."

It follows that Claimant's motion for summary judgment of dismissal must be granted, but without prejudice to the right of the Government, if such right exists, to proceed against the owners of the "Dixie". Let an order be prepared and presented accordingly.

ment such occupation or use will not be injurious to the public interest. * * *

"§ 412. Liability of masters, pilots, and so forth, and of vessels engaged in violations. Any and every master, pilot, and engineer, or person or persons acting in such capacity, respectively, on board of any boat or vessel who shall knowingly engage in towing any scow, boat, or vessel loaded with any material specified in section 407 of this chapter to any point or place of deposit or discharge in any harbor or navigable water, elsewhere than within the limits defined and permitted by the Secretary of War, or who shall willfully injure or destroy any work of the United States contemplated in section 408 of this chapter, or who shall willfully obstruct the channel of any waterway in the manner contemplated in section 409 of this chapter, shall be deemed guilty of a violation of this chapter, and shall upon conviction be punished as provided in the preceding section, and shall also have his license revoked or suspended for a term to be fixed by the judge before whom tried and convicted. And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409, of this chapter shall be liable for the pecuniary penalties specified in the preceding section, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof."