313 F.2d 851
 UNITED STATES of America, Libelant-Appellee,
v.
The M/V MARTIN and BARGE MOS-101, their engines, tackle,
apparel and furniture, and Martin Oil Service,
Inc., an Illinois corporation,
Respondents-Appellants.
 No. 13642.
 United States Court of Appeals Seventh Circuit.
 Feb. 27, 1963.
 
 Edward B. Hayes, Chicago, Ill., William K. Johnson, Lord, Bissell & Brook, Chicago, Ill., of counsel, for appellants.
 John G. Laughlin, Anthony W. Gross, Sherman L. Cohn, Dept. of Justice, Washington, D.C., Marks Alexander, Asst U.S. Atty., Springfield, Ill., Joseph D. Guilfoyle, Acting Asst. Atty. Gen., Edward R. Phelps, U.S. Atty., Dept. of Justice, Washington, D.C., for appellee.
 Before SCHNACKENBERG, CASTLE and SWYGERT, Circuit Judges.
 SCHNACKENBERG, Circuit Judge.
 
 
 1
 United States of America, herein sometimes referred to as libelant, commenced an action in the district court by filing a libel in rem against the M/V Martin and Barge MOS-101, their engines, tackle, apparel and furniture, based upon a cause of collision, civil and maritime. Thereafter, Martin Oil Service, Inc., an Illinois corporation, appeared as owner of said vessel and filed an answer and exceptive allegations to the libel, as well as a crosslibel.
 
 
 2
 The court without a jury tried the case and entered a judgment in favor of libelant,[1] and against the cross-libelant, from which Martin Oil Service Inc., respondent and cross-libelant, has appealed.
 
 
 3
 There is no disagreement between the parties that the libeled vessels collided with and damaged the structure of the navigational aid Drolls Point light in Peoria Lake, a portion of the Illinois River, although it is maintained by respondents that it had already been damaged prior to said collision.
 
 
 4
 Respondents concede in their briefs that the government's evidence as to the reliability of the light is very strong. They say that the gist of the evidence is that every practical step which could be conceived of by the engineers who designed it, was taken to insure that the light would not fall victim to internal failure. They add that, if Drolls Point light had been a mechanically perfect device, absolutely certain not to fail due to internal malfunction, then the only possible explanation for a malfunction is that the cause was external to the light.
 
 
 5
 Respondents contend that 'the record contains uncontradicted and direct evidence that the beacon was not standing'.
 
 
 6
 In view of this contention, the district court received and considered evidence offered by both sides bearing upon the issue thus presented, viz., whether the damage to the Drolls Point light was caused by respondents or whether their collision with the light occurred after it had already been damaged by collision with some other vessel. The trial court made findings that Drolls Point light was in an undamaged condition immediately prior to the collision, and that the Barge MOS-101, in tow of the Martin, collided with and knocked down the light stand. There is in the record substantial evidence to support these findings. No purpose would be here served by a detailed recital thereof. We have no right on the record before us to set aside these findings of fact. They are not clearly erroneous. See 28 U.S.C.A., rule 52(a), which applies to admiralty cases; McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 99 L.Ed. 20.
 
 
 7
 The application of the pertinent substantive law to these and other findings made by the court was correct. 33 U.S.C.A. 408 provides:
 
 
 8
 'It shall not be lawful for any person or persons to * * * destroy, move, injure, * * * or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, * * * for the preservation and improvement of any of its navigable waters * * * or as boundary marks, * * * buoys, or other established marks, * * *.'
 
 33 U.S.C.A. 411 provides:
 
 9
 'Every person and every corporation that shall violate, * * * the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor * * *.'
 
 
 10
 412 of said title provides, in the last sentence thereof, as follows:
 
 
 11
 'And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, * * * and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by was of libel in any district court of the United States having jurisdiction thereof.'
 
 
 12
 These statutory provisions are part of the legislation enacted by Congress for the preservation and protection of navigable waters.
 
 
 13
 Thus in United States v. The Helen, 2 Cir. (1947), 164 F.2d 111, a scow was held liable in rem for a penalty incurred by discharging a quantity of lumber into the tidal waters of New York harbor in violation of 33 U.S.C.A. 441.
 
 
 14
 In The President Coolidge v. United States, 9 Cir. (1939), 101 F.2d 638, a penalty assessed against a libelee was affirmed. Even though the owner of the vessel had issued orders prohibiting the throwing of refuse into the harbor of Honolulu, the act involved, 33 U.S.C.A. 407, makes the action complained of unlawful, and the vessel employed in violating said section was held liable. The action, even though unintentional, was held a violation of the act. The court said, at 640, that any other construction of the statute would change it from one of prohibition to one requiring merely due care.
 
 
 15
 In United States v. The Republic No. 2, 64 F.Supp. 373, at 377 (S.D.Texas 1946), the court, by a careful analysis 408, 411 and 412, supra, demonstrated that the government may recover from any vessel used in violating 408, the pecuniary penalties fixed in 411 and, in aedition thereto, the amount of damages done by such vessel, where an injury to guide walls maintained by the government in navigable waters was done by such vessel, even though there was no negligence shown. Cf. Hill v. George Engine Company, Inc., 190 F.Supp. 417, 419 (E.D.La.1961). 1961).
 
 
 16
 Several district courts are in accord with the above rulings. For instance, The Gansfjord, 25 F.2d 736 (E.D.La.1928), aff'd Aktieselaskabet Dampskib Gansfjord v. United States, 5 Cir. (1929), 32 F.2d 236, cert. denied, 280 U.S. 578, 50 S.Ct. 32, 74 L.Ed. 629, emphasizes the inapplicability of the theory of negligence in an action such as that in the case at bar. At 737, the court said:
 
 
 17
 'The claimant, although it admits that criminal prosecution of the master and pilot is not a necessary condition precedent to suit under the statutes, insists that there is no evidence of their negligence, seeking to capitalize the fact that the testimony of the lighthouse tender was offered only in rebuttal of the master and pilot, who said the East Jetty fog signal was not operating, whereas the lighthouse keepter produced his log records, kept according to regulations, showing that it was. However, this contention, like others by which its defense of unavoidable accident is sought to be sustained, is beside the point, since the statute, as I understand what seems its plain meaning, does not make the vessel's liability for damages for defacing, destroying, or injuring such property depend upon proof of willful or malicious intent, or negligence or want of skill, nor does it permit of a defense that the collision with the shore resulted from a mere mariner's error of judgment. The phrase used in section 14[2] denounces as unlawful the act of any person who shall * * * alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any menner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, whart, pier, or other work built by the United States, * * * etc. It is difficult to conceive how the legislative intent to such restitution of the value of such public property, however it might be damaged, could be stated in plainer terms.'
 
 
 18
 In United States v. The Tug Terry E. Buchanan, et al., 138 F.Supp. 754 at 755 (S.D.N.Y.1956), the court succinctly said:
 
 
 19
 '* * * The vessel is considered as the offender, and the mere fact that it was used in violating the statute is sufficient to impose the liability. * * *'
 
 
 20
 In an attempt to overcome the findings of the district court, respondents inexplicably cite Phila. & R. Ry. Co. v. River & Harbor Imp. Co., 183 F. 109 (C.A.3, 1910), which did not involve the government, but was a suit between two private corporations. One was the owner of a scow anchored at the water's edge of its property and the other was a railroad company operating a tug which struck the scow. Obviously the nature of the parties there made that decision inapplicable to the question of law involved in the case at bar, which is controlled by the sections to which we have referred.
 
 
 21
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 22
 Judgment affirmed.
 
 
 
 [1]
 198 F.Supp. 171