**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**OHIO VALLEY COMPANY, INC., in
personam, and M/V JOHN FITZGER-
ALD, her engines, tackle, appurte-
nances, etc., in rem, Defendants-Ap-
pellants.**

No. 74–1539.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1975.

Decided Feb. 10, 1975.

William P. Kardaras, New York City, Richard C. O'Connor, New Albany, Ind., for defendants-appellants.

Harry R. Silver, Atty., Appellate Section, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before SWYGERT, Chief Judge, and CUMMINGS and SPRECHER, Circuit Judges.

SPRECHER, Circuit Judge.

The primary issue on appeal is whether the defendant-vessel is strictly liable for all of the damage it caused to property of the United States pursuant to sections 14 and 16, Rivers and Harbors Act of 1899, 33 U.S.C. §§ 408, 412,[1] and

---

1. 33 U.S.C. § 408 provides:

It shall not be lawful for any person or persons to take possession of or make use of for any purpose, or build upon, alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in

is thereby precluded from limiting liability by showing that the damages were incurred "without the privity or knowledge of [the] owner . . .." Section 3, Limited Liability Act of 1851, 46 U.S.C. § 183(a).[2]

## I

It is uncontroverted that on October 28, 1970, the M/V John Fitzgerald, with two barges in tow, collided with the land leaf of the lower gate of Ohio River Lock No. 47 causing damage to the gate. Lock 47 is located near Evansville, Indiana and is a work built by the United States for the preservation and improvement of navigable waters. The collision occurred while the vessel was traversing the lock and was caused when her reverse gear failed to operate.

Subsequent to the collision, employees of the U.S. Army Corps of Engineers commenced repairs. These repairs consisted of the removal of the damaged gate and the substitution of a spare temporary gate. The damaged gate was transported to the Louisville, Kentucky district repair facility where it was repaired over the course of several months. On June 1, 1971, the repaired gate was transported back to Lock 47 and reinstalled.

The United States brought this action in two counts. Count I for negligence against the defendant-owner and the defendant-vessel and Count II against the vessel under the Rivers and Harbors Act, 33 U.S.C. §§ 408, 412 [sections 14 and 16]. The government in consideration for not actually seizing the defendant-vessel accepted a commitment from the Home Indemnity Company to pay and satisfy any judgment up to $80,623.27. The district court determined that the defendants were at fault and that plaintiff's total damages were $70,358.90.[3] In addition the M/V John Fitzgerald was fined the additional sum of $500 pursuant to section 16, Rivers and Harbors Act of 1899, 33 U.S.C. § 411.[4]

any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States, or any piece of plant, floating or otherwise, used in the construction of such work under the control of the United States, in whole or in part, for the preservation and improvement of any of its navigable waters or to prevent floods, or as boundary marks, tide gauges, surveying stations, buoys, or other established marks, nor remove for ballast or other purposes any stone or other material composing such works . . . .

33 U.S.C. § 412 provides in relevant part:

And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

2. 46 U.S.C. § 183(a) provides:

The liability of the owner of any vessel, whether American or foreign for any em-

bezzlement, loss, or destruction by any person of any property, goods, or merchandise shipped or put on board of such vessel, or for any loss, damage, or injury by collision, or for any act, matter, or thing, loss, damage, or forfeiture, done, occasioned, or incurred, without the privity or knowledge of such owner or owners, shall not, except in the cases provided for in subsection (b) of this section, exceed the amount or value of the interest of such owner in such vessel, and her freight then pending.

3. The plaintiff originally claimed $78,123.27. The district judge disallowed $7,219.31 for general overhead and $545.06 for excessive overtime, leaving a balance of $70,358.90. Although the United States filed a notice of a cross-appeal, this appeal, pursuant to the government's motion, was dismissed.

4. 33 U.S.C. § 411 provides:

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

Defendants appeal from the awarding of damages. They contest the trial court's finding of negligence on Count I and they rely on 46 U.S.C. § 183(a) to limit their liability to the value of the vessel and her freight at the time of the accident under both counts. Because of our disposition of Count II, it is unnecessary to decide whether the plaintiff sufficiently established its negligence case.

## II

Section 14 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 408 provides that it is unlawful "for any person or persons to . . . injure . . . or in any manner whatever impair the usefulness of any . . . work built by the United States . . . for the preservation and improvement of any of its navigable waters . . . ." It is uncontested that the defendant-owner violated this provision. In addition, the relevant portion of section 16 of the same Act provides that any vessel used or employed in violating section 14 is liable for the civil fines of 33 U.S.C. § 411 and for the amount of damage done by the vessel. 33 U.S.C. § 412.

It has been consistently held that in actions brought by the United States pursuant to 33 U.S.C. §§ 408, 412 there is no requirement that negligence be shown and that a defendant-vessel is liable if it has been the cause of a violation of 33 U.S.C. § 408. United States v. The M/V Martin, 313 F.2d 851 (7th Cir. 1963); United States v. The Terry E. Buchanan, 138 F.Supp. 754 (S.D.N.Y. 1956); United States v. The Republic No. 2, 64 F.Supp. 373 (S.D.Tex.1946);

The Gansfjord, 25 F.2d 736 (E.D.La. 1928), aff'd sub nom. Aktieselskabet Dampskib Gansfjord v. United States, 32 F.2d 236 (5th Cir.), cert. denied, 280 U.S. 578, 50 S.Ct. 32, 74 L.Ed. 629 (1929). Thus, the only question that remains is whether the Limited Liability Act of 1851, 46 U.S.C. § 183(a), may be asserted as a defense by the defendant-vessel. Section 183(a) provides that the liability of the owner of any vessel for damage caused by a collision incurred without the privity or knowledge of the owner shall not exceed the value of the vessel plus freight at the time of the collision. The government takes the position that section 183(a) is irrelevant to its claim under the Rivers and Harbors Act of 1899. We agree.

Although the question of the applicability of section 183(a) in actions by the United States pursuant to sections 14 and 16 of the Rivers and Harbors Act of 1899 has never been squarely answered, In re Midland Enterprises, Inc., 296 F.Supp. 1356, 1364–65 (S.D.Ohio 1968), we are guided to our result by somewhat analogous precedent and reason.

The cases insofar as they deal with the application of the limitation of liability provisions of section 183(a) to the liability provisions of the Rivers and Harbors Act of 1899 deal specifically with the liability of owners for removal of wrecked or sunken vessels.

In Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967), the Supreme Court held that pursuant to section 15 of the Rivers and Harbors Act of 1899, 33 U.S.C. § 409 [wreck statute],[5] when a

---

5. 33 U.S.C. § 409 provides:

It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels . . . .. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States . . . ..

ship is intentionally or negligently wrecked or sunk, the owner is responsible for either removing the obstruction or for the cost of removal. In rejecting the shipowner's argument that the government's remedy, if the government removed the vessel, was limited to the right to sell the vessel and retain the proceeds the Court stated:

> The reading that petitioners [shipowners] would place on the Rivers and Harbors Act of 1899 would create an additional right of limitation, applicable in the special case of a sinking even though the owner is himself negligent. Yet Congress gave no indication, in passing the Rivers and Harbors Act, that it intended to alter or qualify the 1851 Act [section 183(a)]. *In the congressional failure to connect these two statutes, we find at least some evidence that petitioners' discovery of a limitation of liability in the Rivers and Harbors Act is unwarranted.*

*Id.* at 205–06, 88 S.Ct. at 388 (emphasis added).

The Court in a footnote, however, indicated that it was not passing judgment on whether the Limited Liability Act applied to an action under the Rivers and Harbors Act. *Id.* at 205 n. 17, 88 S.Ct. 379.

If *Wyandotte* seemingly left the question unresolved, there are other cases that have held the limitation of liability provisions of section 183(a) inapplicable to the wreck statute of the Rivers and Harbors Act. As early as 1931 the court in The Snug Harbor, 53 F.2d 407 (E.D. N.Y.1931), although not reaching the precise *Wyandotte* question, held that "liability arising from [violation of the wreck statute, 33 U.S.C. § 409] does not come within the scope of the limitation of Liability Act." *Id.* at 409. More recently and subsequent to the *Wyan-*

*dotte* decision a number of courts have held that the limitation provisions of section 183(a) are inapplicable to the wreck statute. In re Chinese Maritime Trust, Ltd., 361 F.Supp. 1175 (S.D.N.Y.1972), aff'd, 478 F.2d 1357 (2d Cir. 1973), cert. denied, 414 U.S. 1143, 94 S.Ct. 894, 39 L.Ed.2d 98 (1974); In re Harbor Towing Corp., 335 F.Supp. 1150 (D.Md.1971) (dicta); In re Pacific Far East Line, Inc., 314 F.Supp. 1339 (N.D.Cal.1970), aff'd, 472 F.2d 1382 (9th Cir. 1973). While it is true that these decisions were premised in part on the reasoning that since the wreck statute imposed on the owner an affirmative duty to mark and then remove the vessel and that any failure to do so would *per se* be within the "knowledge and privity" of the owner and therefore the limitation provisions could not apply, there is considerable language in those cases finding the application of the Limited Liability Act to the Rivers and Harbors Act unwarranted. Thus, in *Chinese Maritime Trust* the district court said:

> There is no indication in the Limitation of Liability Statute, first enacted in 1851, that the costs to the owner of removing the wreck of his vessel were to be limited. Nor does the background of the Rivers and Harbors Act, now construed to require shipowners to pay for removal, suggest an answer to this question.

> Two policies expressed in recent court rulings, however, point in the direction of our conclusion. First is the renewed vigor which the Supreme Court has read into the Rivers and Harbors Act, one of whose aims is to insure the prompt elimination of obstructions to navigation. . . . Second is the disfavor with which expansion of the limitation of liability statute is viewed.

361 F.Supp. at 1178 (citations omitted).[6]

---

**6.** Similarly, in *Pacific Far East* the court said:

> There is nothing in the Rivers and Harbors Act (33 U.S.C. § 401 et seq.) or any other statute of the United States known to the Court which restricts the liability creat-

ed by 33 U.S.C. § 409 to wreck removals undertaken by and at the expense of the Corps of Engineers.

314 F.Supp. at 1349–50.

Our decision not to allow the application of section 183(a) limitations to actions brought by the United States pursuant to sections 14 and 16 of the Rivers and Harbors Act is in some respects easier than and in other respects is supported by similar considerations as the decision not to apply it to actions under the wreck statute. While the cases under the wreck statute do not specifically answer the question of whether section 183(a) applies to actions under 33 U.S.C. §§ 408, 412, we know of no cases which have applied it to actions under these particular provisions of the Rivers and Harbors Act, and the wreck statute cases do indicate the recent trend against applying the limitation of liability provisions to actions brought by the United States under the Rivers and Harbors Act.

One of the primary reasons for not applying the limitation of liability provisions to the wreck statute was because to do so would have been inconsistent with the purpose of the wreck statute, indeed inconsistent with the entire Rivers and Harbors Act—that is: to protect, preserve and make safe the nation's navigable waterways. United States v. Pennsylvania Industrial Chemical Corp., 411 U.S. 655, 663, 93 S.Ct. 1804, 36 L.Ed.2d 567 (1973); Wyandotte Transportation Co. v. United States, 389 U.S. 191, 201, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967); Atlantic Refining Co. v. Moller, 320 U.S. 462, 466, 64 S.Ct. 225, 88 L.Ed. 168 (1943); United States v. The M/V Martin, 313 F.2d 851, 852 (7th Cir. 1963). On this point the rationale of the wreck cases are relevant. Indeed, the purpose of the combined effect of sections 14 and 16 is to provide funds for the replacement and maintenance of improvements built by the United States. This purpose is implemented through an absolute liability standard. Thus, it would be wholly inconsistent to apply the limitation of liability provisions of section 183(a) to the absolute liability provisions of section 14, while at the same time not applying them to section 15 (wreck statute) which speaks in terms of "voluntarily or carelessly" allowing a vessel to sink.[7] Furthermore, section 183(a) speaks in terms of lack of "privity and knowledge." That phrase implies that the owner be unaware of the fault in his vessel that caused an accident. Since the triggering mechanism for section 183(a) limitation of liability is tied to an awareness of negligence, and because negligence is not significant in actions under sections 14 and 16, it follows that the limitation of liability provisions are inapplicable to those sections.

In addition, the technical application of section 183(a) to sections 14 and 16 would be impossible. Sections 14 and 16 speak in terms of a vessel being liable for the damages caused to a United States work. Thus, the United States must proceed *in rem* under section 14 and the relevant part of section 16. Indeed, the government at oral argument admitted that there could be no *in personam* liability under its Count II. In an *in rem* proceeding where amounts claimed in excess of the value of the res seized cannot be levied upon, the judgment for all practical purposes will always be limited to the value of the res which will generally be the value of the ship plus cargo.[8] The *in rem* liability of section 16 for an action brought pursuant to sections 14 and 16 is not amenable to section 183(a) limitation which re-

**7.** This phrase has been interpreted to mean intentionally or negligently. Wyandotte Transportation Co. v. United States, 389 U.S. 191, 207, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967).

**8.** Since in the normal situation the government's action for damages under section 16 will be limited to the value of the ship and cargo, this explains why Congress failed to connect the two statutes. *See generally* Note, Expenses Incurred in Removal of Wrecked Vessel in Panama Canal Not Subject to Shipowner's Limitation of Liability Act, 5 J. Maritime L. & Commerce 671, 675 (1974).

For an explanation of why in the present case an actual decision as to the applicability of section 183(a) to sections 14 and 16 is necessary see note 10, *infra*.

fers only to limiting the *in personam* liability of an owner of a vessel.[9]

Finally, sections 14 and 16, although originally enacted subsequently to the limitation of liability section, do not on their face provide for any exceptions. The provisions of sections 14 and 16 are specific, dealing with the precise situation that occurred here. It is a principle of statutory construction that if two pieces of legislation are inconsistent the later enacted specific statute, such as the Rivers and Harbors Act, will control over previously enacted statutes that speak only in general terms about a given situation. 2A J. Sutherland, Statutory Construction §§ 51.02, 51.05 (4th ed. 1973).

## III

■ The defendant makes one last argument to limit its liability. At trial the government stipulated that H. R. Yeomans, an independent marine surveyor, would have testified that the fair market value of the vessel at the time of the accident was $35,000 and the freight pending at that time was $300. The defendant contends that since this amount was uncontested, the government's *in rem* action was limited to a recovery of that amount. We disagree.

The vessel in this case was never attached. Instead, the government accepted from the Home Indemnity Company a document that provided that in consideration for not seizing the vessel the company agreed that:

> In the event a final judgment or decree (after appeal if any) be entered in favor of the plaintiff against the Motor Vessel John Fitzgerald, then the undersigned company agrees to pay

and satisfy (up to and including, but not exceeding $80,623.27) the said final decree or any lesser amount decreed by the Court, or settled between the parties without final decree being rendered.

> Upon demand, vessels lost or not lost, to cause to be filed a bond in form and sufficiency of surety satisfactory to you or to the Court in the above amount securing your claim against the said vessel in said action mentioned above. In the event a bond as provided herein is filed of record, the undersigned shall have no further obligation herein and this undertaking shall be considered terminated and of no further effect.

Notwithstanding this provision the defendant asserts that another section of the agreement serves to allow it to limit its liability to the actual value of the vessel.

> This letter is written entirely without prejudice to any claims, rights or defenses which the said vessel or vessels or her owners and/or operators or charterers may have under applicable law, including limitation of liability, none of which is to be regarded as waived, and the giving of this letter of undertaking is not to be construed as an admission of liability.

While it is true that this latter provision allows the defendant to argue that the limitation of section 183(a) applies to the government's action in Count II [an argument rejected in part II], it does not allow the defendant to challenge the amount that the indemnity company agreed to be held responsible for in the event that final judgment was entered for the plaintiff.[10] In effect, the indem-

---

**9.** On this point our question is easier than the wreck statute cases. The wreck statute placed a duty on the owner to remove vessels that were obstructions and ever since the *Wyandotte* decision it has been clear that owners could be charged with removal expenses that exceeded the value of the vessel. Even under the wreck statute where an owner's liability was at issue, the courts have refused to apply the Limitation of Liability Act, *a fortiori* under section 16 where only the liability of the vessel is involved the limitation of liability provisions do not apply.

**10.** Given this holding it might seem that our decision in part II, *supra*, is unnecessary. Although it is possible that the stipulation for value could represent the amount recoverable

nity company provided the government with a stipulation for value of a "bond in form . . . satisfactory to [it] . . in the above amount [$80,623.27] securing [its] claim against the vessel . . . ."[11] This agreement to pay the judgment of the court was a complete substitute for the res, and thereby represented the property against which the government had the right to seek to fulfill its judgment. J. K. Welding Co. v. Gotham Marine Corp., 47 F.2d 332 (S.D. N.Y.1931).[12] The fact that the judgment may have been for more than the true value of the vessel is of no import, because it was clearly for less than the amount stated in the agreement from the indemnity company and that agreement represented a complete substitute for the res.[13]

For the foregoing reasons the judgment of the district court is affirmed.

even assuming that the section 183(a) limitation was applicable, this is a more difficult question and our resolution of the case avoids it. Under our disposition we merely hold, after denying the applicability of section 183(a), that the stipulation for value is a complete substitute for the res. If the section 183(a) limitation applied it would be necessary to decide whether the figure stated in that document, which concerns itself primarily with an *in rem* action, could be considered the "amount or value of the interest of [the] owner in [the] vessel, and . . . freight then pending" [language of section 183(a)] as that phrase is used in a section that is dealing with the limitation of *in personam* liability.

11. Apparently there is little legal distinction between the filing of a stipulation for value and a bond. G. Gilmore & C. Black, The Law of Admiralty 650 (1957).

12. In *Gotham Marine* the court said:

A stipulation for value is an agreement with the court by the claimant involving the substitution by the claimant of a chose in action against himself . . . as the res to take the place of the vessel or other property sued in rem.

\* \* \* \* \* \*

The stipulation for value here given has taken the place of the New England for all the purposes of this libel.

\* \* \* \* \* \*

The stipulation for value is a complete substitute for the res, and the stipulation

for value alone is sufficient to give jurisdiction to a court because its legal effect is the same as the presence of the res in the court's custody.

\* \* \* \* \* \*

A stipulation for value cannot, therefore, be lightly set aside. Fraud, which is not here involved, is, of course, a reason for so doing, but a unilateral mistake, such as a statement of the libelant's claim at too small a figure, is not such a reason.
47 F.2d at 334–35.

13. Our judgment is likewise supported by the Supplemental Federal Rules for Admiralty and Maritime Claims. Rule E(5)(a) provides that process *in rem* which has been issued will be stayed on the giving of security which is approved by stipulation of the parties. The section goes on to provide that in the event the parties are unable to fix a sum the court should fix an amount, but in no event should that amount be greater than twice the amount of the plaintiff's claim or the value of the property to be seized whichever is smaller. In our case we had an agreement between the parties in a form that had the amount been fixed by the court it could not have been greater than the value of the vessel. If in fact the $80,623.27 figure stated in the stipulation was greater than the true value of the ship, it appears that it was an error on the owner's part for offering such a generous amount as security for its vessel.