829 F.2d 1399
 95 A.L.R.Fed. 209, 1988 A.M.C. 2507
 UNITED STATES of America, Plaintiff-Appellee,
v.
REPUBLIC MARINE, INC., in personam, M/V C.R. CLEMENTS, in
rem, Defendants- Appellants.
UNITED STATES of America, Plaintiff-Appellee,
v.
CONTICARRIERS AND TERMINALS, INC., in personam, and BARGE
CCT-124, in rem, Defendants-Appellants.
 Nos. 86-1574, 86-1676.
 United States Court of Appeals,
Seventh Circuit.
 Argued Feb. 10, 1987.
Decided Sept. 1, 1987.
Rehearing Denied Nov. 27, 1987.
 
 C.W. Walker, III, Lake, Tindall, Hunger & Thackston, Greenville, Miss., Michael A. Snyder, Snyder & Gerard, Chicago, Ill., for defendants-appellants.
 L. Lee Smith, Asst. U.S. Atty., Peoria, Ill., Gerald D. Fines, U.S. Atty., Springfield, Ill., for plaintiff-appellee.
 Before WOOD and RIPPLE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.
 ESCHBACH, Senior Circuit Judge.
 
 
 1
 This appeal presents the question of whether the strict liability provisions of 33 U.S.C. Secs. 408, 412 require that a vessel be held liable for damage to a lock wall even though the government may have been the sole cause of the damage. We conclude that it does not, and will reverse and remand to the district court to provide the defendants with an opportunity to attempt to show that the government's maintenance of the lock was the sole cause. The appeal also questions the district judge's assumption of jurisdiction over Barge CCT-124. On that question we will affirm.
 
 
 2
 * We recite the facts as found by the district court in a trial to the bench. On August 17, 1979, the tow boat M/V C.R. Clements was pushing a tow of fifteen empty barges up the Mississippi River toward Lock and Dam 21, which was constructed and is operated by the U.S. Army Corps of Engineers. Defendant-Appellant Republic Marine owns and operates the M/V C.R. Clements. One of the barges in the tow was Barge CCT-124. Defendant-Appellant Conticarriers and Terminals, Inc., is the owner of Barge CCT-124 pro hac vice.
 
 
 3
 The width of Lock 21 required the tow boat to divide the barges into two groups, the first of which passed safely through the lock. Prior to pushing the second group of barges into the lock, the lockman advised the tow boat captain to keep the barges close to the east wall of the lock because repairs were being conducted on the west wall. Because the group of barges was only five feet less wide than the lock the tow had to be aligned virtually parallel with the lock wall. The best way to accomplish this alignment and avoid the west wall was to slide along the side of the east wall. To allow this ordinary sliding procedure to be accomplished safely, barges are built with "rub bars" and the lock wall is protected by armor plate. As the tow boat pushed this second set of barges into the lock, Barge CCT-124 caught on the armor plate of the lock wall; the armor plate and some attached concrete tore loose from the wall.
 
 
 4
 The United States made repairs to the wall and brought suit in a verified complaint in rem against the M/V C.R. Clements and Barge CCT-124 and in personam against Republic Marine, as owner of the tow boat, and Conticarriers, as owner of the barge. The suit was premised on sections 408 and 412 of Title 33. The complaint also alleged negligence on the part of Republic Marine in its operation of the M/V C.R. Clements and negligence on the part of both Republic Marine and Conticarriers in operating Barge CCT-124 "without a chamfered rub plate." Republic Marine filed a cross-claim against Conticarriers for indemnity and contribution, alleging that Conticarriers had breached a warranty of the barge's seaworthiness. Conticarriers filed a cross-claim against Republic Marine, alleging that M/V C.R. Clements was not seaworthy, and a third-party complaint against the manufacturer of the barge, Dravo Corporation, alleging that the barge's construction had made it unseaworthy and had caused the damage to the lock wall.
 
 
 5
 The government dropped the negligence charges on the morning of the trial and proceeded on the statutory claims alone. After a one-day bench trial, the district court found that "the M/V C.R. Clements approached Lock and Dam No. 21 in a prudent and seamanlike manner and Pilot Keel followed all orders given by the lockman. There was nothing negligent about the manner in which he approached and entered the lock chamber with the second cut of barges." 627 F.Supp. 1425, 1431. The court also found that Barge CCT-124 and its rub plates were not defective. After the incident, the tow boat captain observed two burrs protruding from the edge of the armor plate. The captain also observed fresh scratch marks on "the side of the barge which had apparently been made when the rub bar passed up against the burrs...." Id. at 1428. Finally, the court found that "but for the protrusion of the burrs into the lock chamber, the accident would not have happened...." Id. at 1435. The district court also held that the "M/V C.R. Clements and its barges were an active cause of the collision." Id. at 14. The court did not inquire into whether the burrs were the result of negligence on the part of the government. The court held the in rem defendants liable under sections 408 and 412 for the $29,944.41 claimed as the cost of repairs to the wall, and also awarded prejudgment interest. The court dismissed the cross-claims and the third-party complaint based on its findings that the barge and the M/V C.R. Clements were seaworthy. The court also awarded against the vessels the minimum pecuniary penalties allowed by section 411, noting that there was no negligence in their operation.
 
 II
 A. In Rem Jurisdiction over Barge CCT-124
 
 6
 On appeal Conticarriers objects to the judgment against Barge CCT-124 on the ground that the barge was not served with the process required by Rule C of the Supplemental Rules for Certain Admiralty and Maritime Claims. The barge was never brought within the jurisdiction of the court by means of process under Rule C.[1] The government and Republic Marine contend, nevertheless, that the barge appeared generally in an answer to Republic Marine's cross-claim and waived its right to challenge jurisdiction over the party by failing to raise it as an affirmative defense until after the trial in its proposed findings of fact. The district judge concluded that the barge had so waived its defense of a lack of jurisdiction over the party.
 
 
 7
 The government in its complaint styled the action as against Republic Marine and Conticarriers in personam and as against the M/V C.R. Clements and the barges in the second group to pass through the lock in rem. The government phrased its complaint in terms alleging that the M/V C.R. Clements and the barges were defendants, and the complaint prayed that process in rem issue against the tow boat and the barges, "citing any claimant thereto to appear and answer the allegations of this Complaint." The complaint also prayed that judgment of condemnation and sale issue against the tow boat and the barges.
 
 
 8
 While the complaint was fashioned in a manner consistent with the requirements for attaching a vessel under Supplemental Rule C, process was never issued or served on the Barge CCT-124. Thus there is no doubt that jurisdiction was never gained over Barge CCT-124 by the supplemental admiralty rules of attachment. This alone, however, is not enough to prove lack of jurisdiction over the vessel. Recent cases have reasoned that, as with other forms of jurisdiction over the party, see Fed.R.Civ.P. 12(h)(1), a vessel may waive jurisdiction in rem by appearing in the action and failing to raise the defense of lack of jurisdiction over the party in a timely fashion. Cactus Pipe and Supply Co. v. M/V Montmartre, 756 F.2d 1103, 1107-11 (5th Cir.1985) (holding that such a waiver occurred); Pacific Employers Insurance Co. v. M/V Gloria, 767 F.2d 229, 234 (5th Cir.1985) (implicitly recognizing the possibility of such a waiver but holding that it had not occurred); Associated Metals and Minerals Corp. v. SS Portoria, 484 F.2d 460, 461-62 (5th Cir.1973) (same). The Fifth Circuit has explicitly likened such waiver in the admiralty and maritime context to that for other forms of jurisdiction over the party under Rule 12(h)(1), Cactus Pipe, 756 F.2d at 1107-08; see also Cavcar Co. v. M/V Suzdal, 723 F.2d 1096, 1102 n. 14 (3d Cir.1983) (suggesting same analysis in dicta), and one district court has explicitly held that Rule 12(h)(1) reaches waivers regarding jurisdiction in rem, although the court was not applying this analysis in an admiralty case, Fish v. Bamby Bakers, Inc., 76 F.R.D. 511, 513 (N.D.N.Y.1977); see also 5 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1351, at 563 (1969 & Supp.1986).
 
 
 9
 Of course, the general rule in civil actions is now (and has been for some time) that any appearance in an action is a general appearance, e.g., Grammenos v. Lemos, 457 F.2d 1067, 1070 (2d Cir.1972); Bjorgo v. Weerden, 342 F.2d 558, 560 (7th Cir.1965), Orange Theatre Corp. v. Rayherstz Amusement Corp., 139 F.2d 871, 874 (3d Cir.) (en banc), cert. denied, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573 (1944), and although the special appearance has not been abolished with respect to admiralty and maritime claims, its preservation requires explicit affirmative acts restricting its appearance.[2] In this case the barge appeared and never explicitly attempted to restrict its appearance in any fashion.
 
 
 10
 In its answer to the complaint Conticarriers admitted that it was the "charterer" of Barge CCT-124 and that both it and Barge CCT-124 would be within the Central District of Illinois during the pendency of the suit. The answer denied the allegations of the complaint in Conticarriers' behalf and also denied several paragraphs of the government's allegations with regard to the barge. The answer, for example, averred that "[t]his Defendant denies that either it or Barge CCT-124 caused injury or damage to Lock 21 or violated 33 U.S.C. Sec. 408." Conticarrier's Answer to Complaint p 10. The answer further denied "that it or any of its barges" was liable for a penalty under sections 411 and 412, and noted explicitly that "[t]his Defendant makes no answer for the M/V C.R. Clements." Id. p 11. Thus while this answer did not explicitly declare that counsel for Conticarriers were also appearing on behalf of Barge CCT-124, it did make denials and admissions regarding the barge. While there is no doubt that this answer alone did not establish an appearance on the part of the barge (since many, if not all, of Conticarriers's admissions and denials concerning the barge were also necessary to establish Conticarriers's in personam defenses as owner of the barge), it also just as certainly does not suggest that any later appearance on the barge's part would be inconsistent with the position taken by Conticarriers in its original answer. The necessity to make denials and admissions regarding the barge also required Conticarriers's counsel to walk a narrow line very close to appearing on behalf of the barge, and the omission of an explicit disavowal of representation of the barge cast an avoidable ambiguity over Conticarriers's answer.
 
 
 11
 In addition to the answer to the government, however, Conticarriers and Barge CCT-124 at a later point in the pleadings also filed an answer to Republic Marine's cross-claim against Conticarriers and Barge CCT-124. The answer was styled "ANSWER OF CONTICARRIERS AND TERMINALS, INC., in personam, AND AS CLAIMANT TO BARGE CCT-124, in rem TO THE CROSS CLAIM OF REPUBLIC MARINE." The answer began "NOW COMES THE Defendant CONTICARRIERS AND TERMINALS, INC., in personam, and as claimant to Barge CCT-124, in rem, by its attorney...." The answer concluded that "Conticarriers and Terminals, Inc., denies that Republic Marine, Inc., is entitled to a judgment of indemnity and/or contribution against Conticarriers and Terminals, Inc. in personam or the Barge CCT-124 in rem." Since a claim to a vessel in admiralty law includes a demand for the right to defend the vessel, see, e.g., Cactus Pipe, 756 F.2d at 1107 n. 5, Conticarriers in identifying itself as the claimant to Barge CCT-124 and entering admissions and denials on the barge's behalf thus entered an appearance in the case for Barge CCT-124. As discussed above, see supra note 2 and accompanying text, it is to no avail to suggest that the barge appeared only in the answer to the cross-claim and not as a party to the suit for all purposes, for it would have had at the very least required an express restriction in order to avoid a general appearance. The government sought to sue the barge; Conticarriers stipulated that it was the owner of the barge pro hac vice and admitted that the barge would be in the district during the suit--two of the fundamental concerns addressed by the rules of maritime process. It filed an answer as the claimant to the barge in a cross-claim. Thus the answer to the cross-claim prayed that the court benefit the barge by holding it free of liability. Once a person, or here a vessel, requests a court to exercise judicial authority in its behalf on the merits of a case, that person or vessel has effectively appeared in the case. Cactus Pipe, 756 F.2d at 1108; Grammenos, 457 F.2d at 1070; Bjorgo, 342 F.2d at 560. While we recognize that there is not a complete set of express provisions in the federal rules with regard to the interrelationship of maritime attachment under the supplemental rules and waiver of jurisdictional defenses under Rule 12(h), there is no conflict between applying both rules. The supplemental rules explicitly state that "[t]he general Rules of Civil Procedure for the United States District Courts are also applicable to the foregoing proceedings except to the extent that they are inconsistent with these Supplemental Rules." Supplemental Rule A. No worthwhile reason has been suggested that counsels preventing vessels from appearing voluntarily, and a voluntary appearance and waiver of a defense of lack of jurisdiction over the party by a vessel has been approved by the Fifth Circuit. Cactus Pipe, 756 F.2d at 1107-11.
 
 
 12
 In Cactus Pipe and Supply Co. v. M/V Montmartre, 756 F.2d 1103 (5th Cir.1985), the Fifth Circuit held that a vessel's owner had, by filing a formal claim to the vessel, appeared on the vessel's behalf and had then waived any claim of lack of in rem jurisdiction. Id. at 1110. In Cactus Pipe, as in the case before us, the complaint expressly characterized the action as one both in rem and in personam, and also included the traditional prayer for issuance of process in rem against the vessel. In both Cactus Pipe and the case before us process never did issue. The Cactus Pipe court nevertheless concluded that the filing of a claim of owner operated as an appearance and the failure to then raise a claim of lack of jurisdiction over the party waived any such defense. Id. at 1107-11.
 
 
 13
 The only difference in this case is that instead of filing a claim of owner with the court Conticarriers identified itself as the claimant to the vessel in an answer to a cross-claim. While we recognize that the lack of an express procedural provision allowing voluntary appearances of vessels may have been relied upon by Conticarriers, such inadvertence and such ill-advised reliance may well have led the other parties to the action and the court reasonably to conclude that Barge CCT-124 had entered the action, thus making unnecessary any resort to the supplemental rules regarding attachment. Conticarriers's counsel in the case also expressly and voluntarily cast their role in the answer to the cross-claim as claimant to the barge, without any indication that the statement was only an announcement that if the barge was attached Conticarriers would then file a claim (which is the position Conticarriers and the barge take on appeal). In such a situation we must conclude that even if the appearance of the barge was in reliance on an erroneous interpretation of somewhat unsettled law it was nevertheless effective to submit the barge to the jurisdiction of the court. Any other result would not only be inconsistent with Cactus Pipe and the purposes of Rule 12(h), but would also contribute to even greater uncertainty and complexity in maritime jurisdiction by making it impossible for parties to rely on the voluntary appearance of a vessel and the waiver of the defense of lack of jurisdiction over the party. To refuse to find jurisdiction in this case would be to encourage a shipowner to enter litigation and avoid formal attachment by seeking to rely on a favorable result, while at the same time standing ready to contest jurisdiction should the result be unfavorable. We by no means suggest that this necessarily occurred in the case before us; we simply suggest that it is a danger to be prevented.
 
 
 14
 Transorient Navigators Co. v. M/S Southwind, et al., 788 F.2d 288 (5th Cir.1986), is not to the contrary. In that action the Fifth Circuit held that because the Southwind's owners had provided a special bond, running to only one party in the litigation, rather than a general bond, see Supplemental Rules E(5)(a), E(5)(b); see also supra note 2, the Southwind was not successfully attached in rem for the benefit of any other party. Id. at 291-93. Thus in that case a reading of the bond and the supplemental rules should have put every party on notice that the appearance of the vessel's owner was limited. The barge in this action made no affirmative attempt to restrict its appearance. The question of the jurisdiction over Barge CCT-124 in this action does not involve any bonds, and while maritime procedure bonds in accord with the supplemental rules for maritime may serve to restrict an appearance, the appearance in the suit at bar was by means of a pleading in answer to a cross-claim, not by means of a special bond.
 
 
 15
 Transorient also turned away a claim that in rem jurisdiction had been obtained over the Southwind simply by means of "full litigation" of its liability, but the court's opinion in Transorient does not suggest that the Southwind took any action that might have amounted to a wider appearance than that indicated by the special bond. Such a result is consistent with the case before us. As we have observed, the litigation of the substantive question of a vessel's liability is largely unavoidable when an in personam party to the case is the vessel's owner. The owner's liability in personam will often turn in large part on the same events that establish the liability of the vessel. If Conticarriers had merely litigated its personal liability as owner of the barge Transorient might be on point. The representatives of Conticarriers, however, did more than this. They also filed an answer to a cross-claim as the claimant to Barge CCT-124 and thereby entered the action on the barge's behalf. We note that the Transorient opinion expressly relied upon an earlier Fifth Circuit precedent that implicitly accepts the proposition that a vessel in a maritime action may voluntarily appear and waive the defense of a lack of in rem jurisdiction. Id. at 293; Pacific Employers Ins. Co. v. M/V Gloria, 767 F.2d 229, 234 (5th Cir.1985).
 
 
 16
 In sum, jurisdiction over a vessel in a maritime proceeding can be accomplished by that vessel's voluntary appearance and waiver of a defense of jurisdiction over the party, and we believe that on the facts of this case such an appearance and waiver has been effected by Barge CCT-124.
 
 
 17
 B. Liability Under 33 U.S.C. Secs. 408 and 412
 
 
 18
 Sections 408 and 412 of Title 33 require, in essence, that the cost of repairing any damage to a work constructed by the United States for the aid of navigation be born by the vessel that caused[3] the damage.[4] Section 408 makes it unlawful to injure such a work and section 412 makes the vessel causing such damage liable in rem. The two sections have long been understood to establish a standard of strict liability. E.g., Chotin Transportation, Inc. v. United States, 819 F.2d 1342, 1348 (6th Cir.1987) (en banc); United States v. Central Soya, Inc., 697 F.2d 165, 168 (7th Cir.1982); United States v. Logan & Craig Charter Service, 676 F.2d 1216, 1219 (8th Cir.1982); United States v. Ohio Valley Co., 510 F.2d 1184, 1186 (7th Cir.1975); United States v. M/V Martin, 313 F.2d 851, 853 (7th Cir.1963). In applying this standard the vessel may be held liable without any showing of negligence on its part; the government is only required to establish that the vessel caused the damage.[5] E.g., Chotin Transportation, 819 F.2d at 1348; Central Soya, Inc., 697 F.2d at 168; Ohio Valley Co., 510 F.2d at 1188.
 
 
 19
 Thus if the defendant vessels here and the government both acted nonnegligently, Congress has under this strict liability provision placed the liability entirely upon the defendant vessels. E.g., Central Soya, Inc., 697 F.2d at 168-69; Ohio Valley Co., 510 F.2d at 1188; see also Chotin Transportation, Inc., 819 F.2d at 1348. Such a conclusion is in accord with the congressional intent to require the barge industry to pay for damage it causes. E.g., Wyandotte Transportation Co. v. United States, 389 U.S. 191, 201, 88 S.Ct. 379, 385, 19 L.Ed.2d 407 (1967); Chotin Transportation, 819 F.2d at 1348; Ohio Valley Co., 510 F.2d at 1188. While in particular cases the repair costs for such damage will be disproportionately borne by particular vessels, it can be assumed that insurance will in general spread such costs over the industry.
 
 
 20
 Requiring the barge industry to pay for damage caused by the fault of the government is another matter entirely. Central Soya, Inc., 697 F.2d at 169 n. 4 (noting that "an offending vessel may escape liability if it can prove that the collision resulted from the fault of the government, which is a typical defense in tort") (dicta); United States v. Tug Colette Malloy, 507 F.2d 1019, 1022 (5th Cir.1975) ("[W]e have no doubt that if the tug had shown the gateman to be solely at fault in causing the accident a defense would have been established.") (dicta); see also Chotin Transportation, 819 F.2d at 1349 n. 4 (noting that its decision does not conflict with the sole cause defense analysis of Central Soya, Inc. or Tug Colette Malloy but recognizing that the facts in the case before it did not require it to rule on the sole cause defense). Congress in sections 408 and 412 did not provide for liability to attach to private vessels where damage is caused solely by the fault of the government.[6] It makes no difference in such a case that the situation involved a vessel, such as here, where the barge contacted the burrs on the lock wall. The fact remains that if the government's negligence was the sole cause of the damage, the contact of the vessel was not the cause of the damage for the purposes of the statute. We think this result especially supported by the fact that one liable under section 408 is also by statute adjudged guilty of a criminal act punishable by imprisonment of natural persons for up to one year. 33 U.S.C. Sec. 411. To allow the government to recover from private parties the cost of its own negligence would in addition produce the unfortunate result of encouraging indifference to the upkeep of navigable works by those charged with such responsibility. We do not suggest that such a result would be beyond the reach of Congress. Such a result would nevertheless be an extreme step and the sparse language of sections 408 and 412 and its companion provisions does not indicate that Congress took such a step. We hold that section 412 does not make a vessel liable for damage that occurs entirely due to the fault of the government. Central Soya, Inc., 697 F.2d at 169 n. 4 (dicta); Tug Colette Malloy, 507 F.2d at 1022 (dicta); see also Chotin Transportation, 819 F.2d at 1349 n. 4. In the case at bar the trial court noted that the barge was actively involved in the incident but was not negligent. The court did not consider whether the government was at fault, and if so, whether its negligence was the sole cause of the damage. If on remand the burrs on the lock wall prove to have been solely the result of governmental negligence, the barge was no more the legal cause of the damage than it would have been had the lock man ordered the barge to halt just outside the lock gates and then negligently swung the gates open into the barge. The fundamental reality in such a case is that had the government acted without fault there would have been no damage.
 
 
 21
 United States v. Logan & Craig Charter Service, 676 F.2d 1216 (8th Cir.1982) does not hold otherwise. In that case the trial court had determined that the government had created an obstruction to navigation under 33 U.S.C. Sec. 403 in misaligning two barges that served as a guidewall into the lock. The trial court further held that the "obstruction" created by the government had been the sole cause of the damage caused when a barge had caught on the "notch" created by the misalignment. The Eighth Circuit did not reverse the trial court on the ground that there was no sole cause defense under sections 408 and 412, but rather overturned the trial court's finding that the government had created an obstruction. The appellate court concluded that the government had not created an obstruction under 33 U.S.C. Sec. 403. Id. at 1218-19. Logan & Craig Charter thus held only that the government was not negligent and therefore did not reach the question of a sole cause defense. We are in full agreement with the Logan & Craig Charter court's conclusion that the "sole issue is causation." Id. at 1220.
 
 
 22
 Our disposition of this case moots the argument on appeal that comparative fault principles ought to apply to sections 408 and 412. Cf. Chotin Transportation, 819 F.2d at 1347-50 (rejecting en banc the argument that comparative fault principles ought to apply to section 412). Contra id. at 1351-55 (dissenting opinions supporting the application of comparative fault to sections 408 and 412). If on remand the district court determines that the government was not negligent there will be no government negligence on which the principles of comparative fault could work to reduce damages. In that case the government's actions cannot be considered to have been the cause of the damage, and the defendants will be liable for the full damages. If, on the other hand, the trial court on remand determines that the damage was caused solely by the government's negligence, the court will necessarily conclude (since it has already determined that the defendants were not negligent) that the damage was caused, for the purposes of the statute, solely by the fault of the government and the defendants will be absolved of all liability.
 
 III
 
 23
 In accordance with the foregoing opinion, the district court's judgment is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion. Circuit Rule 36 shall not apply. Each party shall bear its own costs on appeal.
 
 
 
 [1]
 If a vessel does not appear and waive its defense of lack of jurisdiction over the party, it is clear that jurisdiction in rem over the vessel cannot exist absent an arrest of the vessel. Alyeska Pipeline Service Co. v. Vessel Bay Ridge, 703 F.2d 381, 384 (9th Cir.1983) ("In absence of an arrest, no decree in rem can be rendered against the res."), cert. dismissed, 467 U.S. 1247, 104 S.Ct. 3526, 82 L.Ed.2d 852 (1984). Our holding today in no way questions this fundamental rule of admiralty and maritime law. We merely hold that jurisdiction in rem, like other forms of jurisdiction over the party, may be waived by a party that appears before the court in accordance with the purposes of Rule 12(h)(1)
 
 
 [2]
 While the modern version of Federal Rule of Civil Procedure 12(h)(1) has abolished the distinction between general and special appearances for virtually all suits brought under those rules the Supplemental Rules for Certain Admiralty and Maritime Claims has preserved two forms of restricted appearance. Under the first, once process has been issued against a vessel a party may file a "special bond" under Supplemental Rule E(5)(a), with the approval of clerk or court, or by means of stipulation of the parties, under which execution of process will be stayed. Such a special bond "shall be conditioned to answer the judgment of the court or of any appellate court. The parties may stipulate the amount and nature of such security." Supplemental Rule E(5)(a). The supplemental rules also allow the owner of a vessel to stay execution of process against the vessel by filing a "general bond" with the approval of the court "conditioned to answer the judgment of such court in all or any actions that may be brought thereafter in such court in which the vessel is attached or arrested." The special bond thus allows restrictions on potential liabilities not possible under the general bond. One such restriction is the ability for the vessel to appear in rem in an action only for the purposes of one party's claim. Such a bond "does not run in favor of any other party to the litigation." Transorient Navigators Co. v. M/S Southwind, 788 F.2d 288, 292-93 (5th Cir.1986)
 The other form of restricted appearance explicitly established by the supplemental rules in pertinent part allows a party that has appeared to defend in an admiralty or maritime suit in which process has been issued in rem to expressly restrict the appearance to the defense of that claim. Supplemental Rule E(8). The rule was fashioned in order to avoid subjecting an in rem party to the jurisdiction of the court with reference to other claims for which "such process is not available or has not been served...." Supplemental Rule E(8) Advisory Committee Note.
 Because no process was served in this case neither form of restricted appearance was directly available to Barge CCT-124. Nevertheless, the two restrictive appearance rules for vessels that have been attached may suggest that a vessel that voluntarily appears ought to be similarly able to restrict its appearance. Even if this is the case (a question we do not decide), we have no doubt that such a restriction on appearance would have to be expressly claimed in similar fashion to that allowed for vessels that have been attached. No such express restriction on its appearance was made by the barge in its answer to Republic Marine's cross-claim, or at any other point in the litigation.
 
 
 [3]
 The statutory provisions do not use the words "cause" or "proximate cause." See infra note 2. All of the language describing the unlawful behavior in section 408 involve the common element of causation, however, and the courts generally frame the issue that way. See Central Soya, Inc., 697 F.2d at 168
 
 
 [4]
 33 U.S.C. Sec. 408 provides in pertinent part:
 It shall not be lawful for any person or persons to take possession of or make use of, or build upon, or alter, deface, destroy, move, injure, obstruct by fastening vessels thereto or otherwise, or in any manner whatever impair the usefulness of any sea wall, bulkhead, jetty, dike, levee, wharf, pier, or other work built by the United States ... for the preservation and improvement of its navigable waters or to prevent floods....
 33 U.S.C. Sec. 412 provides in pertinent part:
 And any boat, vessel, scow, raft, or other craft, used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.
 33 U.S.C. Sec. 411 provides in extenso:
 Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.
 
 
 [5]
 We note that there is no dispute in this action over the identity of Lock 21 as a "work built by the United States ... for the preservation and improvement of any of its navigable waters or to prevent floods...." See 33 U.S.C. Sec. 408; see also supra note 4
 
 
 [6]
 We stress that in this opinion we seek only to divine and apply the intent of Congress and in no way invoke the latitude a court might have in interpreting the common law. Accord Chotin Transportation, 819 F.2d at 1350-51 & n. 5