UNITED STATES of America, Plaintiff,

v.

LOGAN & CRAIG CHARTER SERVICE, INC., in personam, and M/V Margie Logan, its engines, tackle, appurtenances, etc., in rem, and Nine Unknown Barges, in rem, Defendants.

No. 79–0067 A (1).

United States District Court, E. D. Missouri, E. D.

June 8, 1981.

Joseph B. Moore, Asst. U.S. Atty., St. Louis, Mo., for plaintiff.

Frank J. Dantone, Michael D. O'Keefe, St. Louis, Mo., Joel J. Henderson, Greenville, Miss., for defendants.

## MEMORANDUM

WANGELIN, Chief Judge.

This matter is before the Court for a decision following a two-day bench trial held January 14 and 15, 1980. This is an admiralty and maritime claim within Rule 9(h) of the Federal Rules of Civil Procedure and the plaintiff United States of America is a sovereign nation authorized to sue under 28 U.S.C. § 1345. United States seeks damages and penalties for the negligent operation and control of a tug, the M/V Margie Logan and its barges, and further for the violation of 33 U.S.C. § 408. The United States also seeks penalties for alleged violations of 33 U.S.C. § 412 as provided for in 33 U.S.C. § 411. Jurisdiction over this cause rests with this Court pursuant to 28 U.S.C. § 1333.

After consideration of the testimony adduced at trial, the exhibits introduced into evidence, the briefs of the parties, and the

applicable law, the Court hereby makes and enters the following findings of fact and conclusions of law. Any finding of fact equally applicable as a conclusion of law is hereby adopted as such and, conversely, any conclusion of law applicable as a finding of fact is adopted hereby as such.

### Findings of Fact

1. The United States of America is a sovereign nation. Logan & Craig Charter Service, Inc. (hereinafter Logan) is a Mississippi corporation and at all times pertinent hereto was the owner and/or operator of the M/V Margie Logan.

2. The barge BPL–6811, a DeLong Pier Barge, is a steel barge built in Japan in 1966, with a length of 300 feet, a width of 80 feet, and a depth of 13 feet. This barge is owned by the United States Army Mobility Equipment Command which is a division of the United States Department of Defense.

3. The M/V Margie Logan is a diesel towboat with the dimensions of 131.8 feet in registered length, 140 feet in over-all length, 45 feet in registered breadth, and a gross tonnage of 553 tons. It is powered by three diesel engines developing a total of 5,600 horsepower, and has a full complement of 6 flanking rudders and three steering rudders.

4. Lock and Dam No. 26 is located at mile 202.9, in the upper Mississippi river adjacent to Alton, Illinois. The lock is located on the Illinois side of the dam and consists of two chambers: a main chamber which is closest to the shore and an auxiliary chamber which is outriver of the main chamber. The main chamber is 110 feet wide by 600 feet long and the auxiliary chamber is 110 feet wide by 360 feet in length. There is an upper concrete guidewall which extends 600 feet above the upper gate and is located on the left descending bank.

5. In 1974, the United States Army Corps of Engineers extended the upper concrete guidewall 600 feet by the use of four 150 foot long DeLong Pier Barges, each of which contained spuds which are used to secure the pier barges while they float and support the pier barges in an affixed jacked-up position.

6. Prior to October 14, 1976, two of these DeLong Pier Barges were removed, and replaced by one 300 foot barge, the PBL–6811. The upriver barge of the unit was the BPL–6706, then the BPL–6811, with the BPL–6705 being the downstream barge of the unit. These three barge units were installed on October 5, 1976 approximately nine days prior to the collision between the M/V Margie Logan and the tow with the port corner of the PBL–6811, the middle barge of the unit. The collision occurred on October 14, 1976, at approximately 5:30 a.m. At that time the M/V Margie Logan and tow had arrived above Lock 26 and was awaiting its turn to pass through the lock in a downstream direction. The M/V Margie Logan had in her tow nine loaded barges arranged three wide and three long. The port lead barge was the MB–5805. The M/V Margie Logan and tow remained above the approach to Lock and Dam 26 until around 12:30 p.m. on said date. The M/V Margie Logan was at that time piloted by one Earl Ellison, a pilot with seventeen years experience. Mr. Ellison was properly licensed for this section of the river and traveled this portion of the Mississippi in both directions on many occasions prior to this date.

7. At approximately 12:15 p.m. on October 14, 1976, the M/V Indiana and tow were tied to the upper concrete guidewall awaiting a down bound lockage. At this time, the lock master of Lock and Dam 26 instructed Earl Ellison to slip the M/V Margie Logan in behind the M/V Indiana to await lockage. The lock master specifically instructed Earl Ellison to land the M/V Margie Logan and tow on the DeLong Pier Barges and hold up on the barges until the M/V Indiana had completed its lock through. The M/V Margie Logan and tow approached the DeLong Pier Barges at approximately a 45 degree angle and the port corner of the barge MB–5805 contacted the port corner of the barge BPL–6811. The approach of the M/V Margie Logan was

performed in a manner consistent with the customary and excepted navigational procedures and was accomplished by pilot Ellison in a prudent and seamanlike manner.

8. At the time of the collision the weather and river conditions were normal and the M/V Margie Logan was proceeding at a slow rate of speed with deckhands on either side of the tow acting as lookouts.

9. This Court finds as a matter of fact that the port corner of the barge BPL–6811 was protruding out into the navigable channel and was approximately four to six inches out of alignment with the barge immediately upriver, the BPL–6706. This alignment created a notch at the juncture between the BPL–6706 and the BPL–6811. Although the angle at which the tow approached the DeLong Pier Barges was consistent with prudent docking procedures, this notch was not readily observable until the M/V Margie Logan and tow were within a few feet of the barge. This situation rendered it impossible for the deckhands posted on the head of the tow to recognize the obstruction in time to relay the information back to the pilot and for the pilot to take evasive action before the contact was made.

10. The evidence was uncontradicted that the barge BPL–6811 was not built to be used as a lock guidewall, but rather was built by the United States Army Aviation and Material Readiness Command in Japan to be used as a portable pier for loading and unloading of equipment in Viet Nam. The use of this barge as a guidewall at Lock and Dam 26 was not customary. The evidence presented indicates that the rationale behind using the DeLong Pier Barges as a guidewall in this particular instance is that such barges were less expensive and quicker to implement. The weight of credible evidence further established that the Corps of Engineers was at all relevant times hereto fully aware that a concrete guidewall extension would have better served the intended purpose and would have withstood the normal and foreseeable contact of tows without sustaining damage.

11. The Court finds that plaintiff failed to present sufficient evidence that the utilization of the DeLong Pier Barge as a guidewall extension was recommended by the Chief of Engineers and authorized by the Secretary of the Army as required by 33 U.S.C. § 403. The Court finds that the condition of the DeLong Pier Barges constituted an obstruction to navigation and that the requirements of 33 U.S.C. § 403 were not properly shown to have been met by the United States.

12. The collision in question occurred on pilot Ellison's first trip southbound after the barge PBL–6811 was installed above Lock and Dam 26. Mr. Ellison testified that he had not experienced any problems landing on the DeLong Pier Barges prior to the date in question and was at that time not aware of the existence of any notches prior to or at the time of the collision.

13. The Corps of Engineers did not notify any towboat owners or the United States Coast Guard concerning the misalignment of the barge PBL–6811 nor were instructions given to not use the DeLong Pier Barges as a guidewall leading into and out of the Lock.

14. The damages on the DeLong Pier Barge attributable to the collision with the M/V Margie Logan were minor in nature and were several feet above the water line. The Corps did not remove the barge since the condition of barge PBL–6811 would not interfere with navigation into and out of the lock any more than it did prior to the October 14, 1976 collision. After the collision, the barge remained in this condition without repair for approximately six months. Approximately March 5, 1977 the M/V Yankton collided with the same port corner of the barge. This collision was not caused or contributed to in any manner by the then existing damage to the barge PBL–6811. The M/V Yankton collided with the barge at the same location as did the M/V Margie Logan; however, the damages attributable to the M/V Yankton were much more extensive in nature and amounted to approximately Seventy Nine Thousand Three Hundred Eighty Two Dollars ($79,382.00).

15. Shortly after the M/V Yankton collision the owners of the M/V Yankton repaired the port corner of the barge PBL–6811 by welding and recropping the steel plating on the damaged area. The barge has remained in this same condition since March of 1977. Up to and including the present the Corps of Engineers has made no expenditures on the barge arising out of the collision with the tow of the M/V Margie Logan.

16. The Court finds that the M/V Margie Logan was seaworthy in every respect, its crew not inattentive to their duties, and that the tow and crew were free from any actionable fault in connection with this accident. This Court finds the misalignment of the barge PBL–6811 in that it protruded into the navigable path of southbound tows approaching and utilizing Lock and Dam 26 constituted a peril or hazard to navigation.

### Conclusions of Law

At the time of the collision between the M/V Margie Logan and tow with the DeLong Pier Barge BPL–6811, said barge was extending out into the navigable channel approximately six inches. This misalignment created a notch between the barge and the barge immediately upriver, the BPL–6706. Based upon the evidence presented at the trial concerning the customary use for the landing out southbound tows on the DeLong Pier Barges below Lock and Dam 26, and the specific instructions from the lock master to the pilot of the M/V Margie Logan to land up against the DeLong Pier Barges, the Court concludes that the aforementioned notch was a hazard and a peril to navigation for the M/V Margie Logan and tow.

The plaintiff relies upon 33 U.S.C. § 408 as the basis for its recovery for damages on its claim. 33 U.S.C. § 403 provides:

The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is hereby prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, brake-water, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; . . .

Upon review of the evidence presented in this matter, it is the Court's finding that plaintiff has failed to establish that the use of the DeLong Pier Barges was recommended by the Chief of Engineers and authorized by the Secretary of the Army as required. Therefore the plaintiff has the burden of convincing this court that this violation could not have caused or contributed to the cause of the collision. *See Magno v. Corros*, 439 F.Supp. 592 (D.S.C.1977). A discussion of this issue is not necessary because of the Court's earlier findings vis-a-vis the negligence of the plaintiff.

There is some question as to whether the barge BPL–6811 does fall within the purview of 33 U.S.C. § 408, and if the utilization was under proper authority since the defendant argues that in order for plaintiff to claim damages under 33 U.S.C. § 408 the property damages must be a "seawall, bulkhead, jetty, dike, levee, wharf, pier or other work *built* by the United States . . . in whole or in part *for the preservation and improvement of any of its navigable waters or to prevent floods* . . . (emphasis added). Defendants strenuously contend that the barge BPL–6811 was not built for the preservation or for the improvement of United States waterways. This Court does not reach this question since upon reviewing the evidence before it in this matter it can only be concluded that the United States Corps of Engineers created an obstruction or peril to navigation for southbound tows since the barge BPL–6811 was misaligned; and as such, the Corps owed a duty to the M/V Margie Logan to use due care to discover this fact and to obviate this hazard or give adequate warning of the existence of the peril to approaching southbound vessels. *Indian Towing Co. v. United States*, 350 U.S. 61, 69, 76 S.Ct. 122, 126, 100 L.Ed. 48

(1955); *Dye v. United States*, 210 F.2d 123, 128 (6th Cir. 1954), *Little v. United States*, 290 F.Supp. 581 (E.D.La.1968).

The evidence presented at trial clearly establishes that the Corps of Engineers was charged with the duty of operating and maintaining Lock and Dam 26. The Court has previously found that based upon the affirmative instructions from the lock master to the pilot of the M/V Margie Logan and the customary usage of the DeLong Pier Barges by southbound tows, the plaintiff clearly failed in its duty to correct the peril to navigation or to warn navigators of said peril. Thus, the Court concludes that this negligence was the proximate cause of this collision. *See Everitt v. United States*, 204 F.Supp. 20 (S.D.Tex.1962). The sole proximate cause of this collision was the misalignment of the barge BPL–6811 and the negligent failure of plaintiff to adequately ascertain and warn southbound tows approaching the DeLong Pier Barge of this peril. Since this Court is of the opinion that defendant is not guilty of any actionable negligence and/or unseaworthiness, the defendant, Logan, bears no responsibility for this accident or any damages resulting therefrom. *See U. S. v. Tug Colette Malloy*, 507 F.2d 1019, 1022 (5th Cir. 1975).

Accordingly, judgment will be entered in favor of all the defendants.